FOURT, J.
In an information filed in Los Angeles County the defendant was charged in five counts with grand theft. A jury was waived and the cause was submitted to the trial judge upon the testimony taken at the preliminary hearing and some additional testimony. The judge found the defendant guilty as charged in count IV and not guilty as to the remaining counts. A motion for a new trial was made and denied. Defendant was placed on probation for five years, a part of the terms thereof being that he spend the first six *302 months in the county jail. Defendant has appealed from the judgment of conviction, from the order denying the motion for a new trial, and from the order granting probation.
A résumé of some of the facts is as follows: Robert Cantril, after a discussion with the appellant, consigned his 1955 Mercury automobile to the Carmen Auto Sales Co. on April 5, 1957. Robert Wilkinson, the manager of the Carmen Auto Sales Co. and nephew of the appellant, wrote up the transaction.
Appellant had told Cantril in effect to bring his car down to the appellant’s car lot (Carmen Auto Sales Co.) and then said, “We’ll write a consignment up for you.” Appellant also told Cantril that when the car was sold he, Cantril, would be asked to turn the pink slip over to him and that he, the appellant, would give Cantril the money for his car, which was to be in the amount of $1,000.
About April 18, 1957, Cantril was at the appellant’s ear lot and did not see his Mercury automobile. Cantril talked with appellant and was told by appellant that the automobile was sold and that he would receive his money. Cantril was never paid. The pink slip was not delivered to appellant. Approximately one year later Cantril saw the Mercury automobile in a used car lot in Inglewood, where he also met Paul Stillie. Stillie purchased the Mercury automobile from Carmen Auto Sales on April 16, 1957. Stillie discussed the sale to him with appellant and it was agreed that there would be a trade-in allowance of $50 for Stillie’s 1948 Buick car. Stillie made two payments on the Mercury automobile, paying appellant $242 in cash at one time and received a receipt therefor from Wilkinson. Stillie also paid another $700 by check to a salesman, Bob Day, and Day gave Stillie a receipt therefor.
Approximately four weeks after the purchase of the ear by Stillie he went back to the Carmen Auto Sales Co. car lot establishment and found that the place had been disposed of and no one was there. Approximately one year later Stillie got the pink slip for the Mercury car from Cantril.
Jay Morris, an investigator for the California Department of Motor Vehicles, talked several times with appellant. At the first of such talks on February 23, 1958, in the office of appellant’s attorney, appellant stated that “he felt badly that these people had been hurt, an'd that as soon as he had the cash, he was going to take care of them. He also mentioned the fact that Ms nephew had been acting under his orders and *303 that everything he did—by he, I mean the nephew—everything that the nephew did was under his orders.” The nephew is Warren Wilkinson. Appellant also stated to Morris that he did not have the title to the Mercury car, that he could not get such title because he would have to pay for it.
Appellant testified that he approved and initialed the “option receipt” which evidenced the transaction between Stillie and the salesman. At this time the appellant knew that the automobile which was being sold to Stillie was a consigned car. Appellant admitted that he never paid Cantril for the Mercury, that he did not know what had happened to the money that had been received from Stillie. Appellant also admitted that after talking with the investigator on February 23, 1958, he left the State of California and later told the investigator that he had been gone for approximately two and one-half years.
Appellant now asserts that the evidence was insufficient to sustain the judgment. It is not denied that the Mercury car was consigned by Cantril and that the automobile was sold to Stillie, that two payments in the sums of $700 and $242 respectively were received by Carmen Auto Sales and that the money was never delivered to Cantril. There is evidence that the $242 payment was made to the appellant.
Appellant converted the ear to his own use and in a manner which was entirely inconsistent with the purpose of the bailment. (People v. Hunter, 147 Cal.App.2d 472, 476 [305 P.2d 608]; People v. Baker, 64 Cal.App. 336, 342 [221 P. 654].)
The appellant cannot hide behind the corporate entity under the circumstances of this case. (See People v. Smith, 96 Cal.App. 373, 378-379 [274 P. 451]; People v. Waxman, 114 Cal.App.2d 399, 408 [250 P.2d 339]; People v. Jones, 61 Cal.App.2d 608, 620-627 [143 P.2d 726]; People v. Epstein, 118 Cal.App. 7, 11 [4 P.2d 555].)
We think there is no merit to the contentions of appellant.
The judgment and orders made are and each of the same is affirmed.
Wood, P. J., and Lillie, J., concurred.